# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **US Mineral Products Co.,** | 01-CV-4936 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **Anderson, Kill & Olick, P.C.,** | **HON. WILLIAM J. MARTINI** |
| **Defendant.** | |

Gerald Krovatin, Esq.
Krovatin & Assoc., LLC
744 Broad Street
Suite 1901
Newark, NJ 07102

   *(Attorney for Plaintiff)*

Arthur S. Goldstein, Esq.
Wolff & Samson, PC
One Boland Drive
West Orange, NJ 07052-1776

   *(Attorney for Defendant)*


**MARTINI, U.S.D.J.:**

   This matter comes before the Court on Defendant Anderson, Kill & Olick's ("AKO's")

motion for summary judgment.  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons

set forth below, AKO's motion is **DENIED**.

## I.  Introduction

This is a legal malpractice claim between U.S. Mineral ("USM"), a Delaware corporation with its principal place of business in New Jersey, and Anderson, Kill & Olick ("AKO"), a New York corporation with its principal place of business in New York.

## II.  Statement of Facts

From the mid-1950s until the early 1970s, USM sold various asbestos-containing products.  In the early 1980s, USM became the target of numerous lawsuits for bodily injury and property damage related to asbestos exposure.  Employers Insurance of Wausau ("Wausau"), with which USM had comprehensive general liability insurance coverage, bore responsibility for defending USM against the asbestos suits.

In the early 1990s, USM accused Wausau of improperly settling suits with certain claimants so as to exhaust prematurely USM's insurance policy limits.[1]  The two companies subsequently entered into negotiations to resolve the issue of these settlements ("disputed settlements").  In August 1992, USM and Wausau executed a tolling agreement whereby they agreed to toll the statute of limitations for any legal claims arising out of these settlements while they tried to resolve the dispute.  AKO represented USM in negotiating and executing this agreement.

Around the same time, USM found itself involved in disputes with Wausau and its other insurance providers over the proper allocation of financial responsibility amongst these companies for asbestos-related lawsuits.  In January 1993, USM entered into a cost-sharing

---

[1] USM alleged that, between 1986 and 1989, Wausau improvidently settled 1,564 claims (for which suits had not been instituted) for $4,159,000 and 428 lawsuits for $1,681,000.

2

agreement ("Claims Handling Agreement" or "CHA") with all of these insurers.  AKO represented USM in negotiating and executing this agreement as well.

Unfortunately for USM, the CHA included a release provision whereby all parties agreed to relinquish any claims against any other party or parties arising out of the insurance contracts in question.  USM signed the agreement believing, based in part on AKO's assurances, that the disputed settlements would not be affected by this provision.  In April 1994, negotiations between USM and Wausau over the disputed settlements broke down.  At this point, USM retained a different law firm and filed suit against Wausau for "bad faith" performance under the insurance contract ("Wausau litigation").  Wausau asserted the release provision of the CHA as its defense, arguing that the provision served to bar USM's claim.

In March 1997, the New Jersey trial court handling the Wausau litigation ruled against USM, finding that the release provision indeed barred USM's action against Wausau.  The Appellate Division affirmed the decision in May 2000, and the New Jersey Supreme Court denied USM's request for certification soon thereafter.

USM subsequently filed this legal malpractice claim against AKO in October 2001, alleging that, as a result of AKO's improper drafting of the CHA, USM lost all rights to proceed against Wausau over the disputed settlements.  With discovery complete, AKO has filed for summary judgment.  AKO argues only that the statute of limitations and laches bars USM from prosecuting this claim.

**III.     Summary Judgment Standard**

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex*, 477 U.S. at 323. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *Id.* at 249.

4

**IV.    The Statute of Limitations Has Not Run**

AKO argues that the statute of limitations has run on USM's malpractice claim, and thus that the claim should be dismissed.  Under New Jersey law, legal malpractice claims are subject to a six year statute of limitations.  N.J. Stat. Ann. § 2A:14-1.  The limitations period begins to run when "the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim." *Grunwald v. Bronkesh*, 621 A.2d 459, 464 (N.J. 1993).

It is important to note at this juncture that AKO previously motioned for summary judgment before this Court prior to the commencement of fact discovery in 2002.  In this prior motion, AKO argued as it does here, that USM's claim should be dismissed because the statute of limitations had expired.[2]  This Court denied that motion, finding that USM's cause of action against AKO did not ripen until 1997, when the state trial court dismissed the Wausau litigation.[3] This Court found that only when USM received the adverse judgment did it have sufficient knowledge of AKO's malpractice and also sustain actual damages as a result of the malpractice.[4]

---

[2]The previous motion was heard in April 2002 by Judge Katharine Hayden.  AKO argued that the statute of limitations began to run in 1994, at the commencement of the Wausau litigation.

[3]This Court could not find fusion between the elements of knowledge and actual damage until the 1997 state court judgment.  In so finding, it stated, "I can't pickup the two strains [of knowledge and actual damage] as hitting the same point at the same time...until the court's interpretation of the agreements negotiated by AKO was such that the court found that USM no longer had any claims against Wausau."  Summ. J. Hr'g Tr. 56:16-21.

[4]This Court will assume for the purposes of this motion that AKO in fact committed malpractice in negotiating and executing the CHA.  This assumption is made for the sole purpose of addressing this motion and does not reflect this Court's opinion about the substantive merits of USM's case.

We found convincing USM's assertion that, until the trial court held otherwise, it simply did not believe AKO had erred in drafting the CHA, and that it believed the disputed claims were protected by the tolling agreement.  Relevant to this Court's decision at that time were representations made by AKO and Wausau during the course of negotiations over the disputed settlements that provided support for USM's position.  These representations included AKO's repeated assurances that the disputed settlements remained beyond the scope of the CHA as well as Wausau's continued negotiation with USM over the disputed settlements even after execution of the CHA.  This Court found that only when the trial court ruled against USM did USM realize AKO had failed to protect its interest vis a vis the disputed settlements.

In denying AKO's motion, however, this Court left the door open for further discovery to demonstrate that USM knew it had a claim against AKO at an earlier point in time.  Accordingly, AKO has now renewed its motion for summary judgment and has submitted additional facts culled during discovery to try and demonstrate USM's pre-1997 "knowledge" of AKO's malpractice.  None of the additional facts put forth by AKO convince this Court that it should withdraw from its earlier position.

AKO relies heavily on the fact that USM received and read in 1994 Wausau's trial brief in the Wausau litigation, in which Wausau argued that the release provision barred USM's suit.  In essence, AKO argues that USM's knowledge of Wausau's defense amounted to "knowledge" of the malpractice so as to trigger the statute of limitations.  We are puzzled by the fact that AKO places so much emphasis on this theory in this summary judgment motion, given that we specifically rejected the argument in our 2002 ruling.

In 2002, this Court rejected the notion that knowledge of Wausau's interpretation of the CHA gave rise to USM's knowledge that AKO had committed malpractice. We stated: "that Wausau believed that [the CHA] should be interpreted a certain way and raised that as a defense, I don't find lists [sic] the facts before me to that level of coincidence of actual damage and knowledge." Summ. J. Hr'g Tr. 56:7-11. AKO's renewed request for this Court to grant summary judgment on the basis of this particular theory amounts to an untimely motion for reconsideration of the prior decision. This Court declines to entertain such a motion.

AKO has provided a list of other circumstantial evidence that it argues provides alternative proof of USM's knowledge in 1994 of AKO's malpractice. This Court has reviewed AKO's submission at length and does not believe that the evidence AKO has put forth demonstrates that USM knew in 1994 that it had forfeited its right to pursue a claim against Wausau. For instance, AKO points to a March 1994 letter, in which USM inquired of AKO whether USM had forfeited its right to continuing defense by Wausau by entering into the CHA. AKO replied that it probably had. Although AKO proffers this exchange as proof that USM knew as of the date of this letter it could no longer pursue a claim against Wausau, AKO confounds the issue of pursuing a claim over the disputed settlements, which were subject to the tolling agreement, with the issue of pursuing a claim over continuing defense.

AKO also proffers as proof a fax copy of the CHA that USM sent to McCarter & English, the law firm that represented USM in the Wausau litigation, in 1994. Next to the release provision in that fax is the handwritten word "ouch." AKO accordingly argues that the handwritten scrawl evinces knowledge on the part of McCarter & English, and thereby USM, of the effect the provision would have on USM's claim against Wausau. This Court only points out

7

that, even if AKO could establish who wrote the word "ouch" and when, the evidence would remain suggestive at best.  In sum, this Court reaffirms its prior decision and holds that USM did not have sufficient knowledge of the malpractice until the trial court's adverse ruling in 1997.

**V.  The Claim is Not Barred by the Doctrine of Laches**

AKO's asserts the doctrine of laches as an alternative basis for summary judgment.  AKO maintains that, even if the statute of limitations had not run by the time USM filed this suit, USM's delay in filing suit compels the dismissal.  Specifically, AKO argues that the four and a half year gap between the 1997 judgment in the Wausau litigation and the October 2001 complaint in this case resulted in prejudice to its defense.

Laches is an equitable doctrine that bars claims that have been unreasonably delayed. The essential elements of laches are: "(i) the plaintiff must have knowledge of the claim, and (ii) there must be prejudice to the defendant arising from an unreasonable delay by plaintiff in bringing the claim." *Cantor v. Perelman*, 414 F.3d 430, 439 (3d Cir. 2005) (citing *Fike v. Ruger*, 752 A.2d 112, 113 (Del. 2000)).  The laches defense is reserved for those rare cases where a protracted acquiescence by plaintiff induces a defendant to undertake substantial activities in reliance on the acquiescence.  *Tonka Corp. v. Rose Art Indus.*, 836 F. Supp. 200, 219 (D.N.J. 1993) (citing *Estate of Presley*, 513 F. Supp. 1339, 1351 (D.N.J. 1981)).  To grant summary judgment on the basis of laches, a court must find "more than mere delay."  *Mancini v. Twp. of Teaneck*, 846 A.2d 596, 603 (N.J. 2004) (citing *Northwest Covenant Med. Ctr. v. Fishman*, 770 A.2d 233 (N.J. 2001)).  The delay must be "for a length of time which, unexplained and

8

unexcused, is unreasonable under the circumstances and has been prejudicial to the other party."
*Id*.

This Court finds that USM had ample reason for waiting until 2001 to file its complaint. The New Jersey state courts did not enter final judgment in the Wausau litigation until sometime in 2000.  Until then, USM reasonably believed it might still prevail, in which case USM would have no malpractice claim against AKO.  That USM waited until the state courts conclusively decided it had no claim against Wausau is entirely reasonable.


**VI. Conclusion**

In light of the foregoing reasons, Defendant's motion for summary judgment is **DENIED**.



**Dated:**   October 6, 2005


                                            s/William J. Martini
                                            _____
                                            **William J. Martini, U.S.D.J.**


cc:     The Honorable Ronald J. Hedges, U.S.M.J.